**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:90-cr-85-MOC-1**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ERIC WHITENER, | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

**THIS MATTER** is before the Court on Defendant Eric Whitener's Motion for

Compassionate Release/Reduction of Sentence. (Doc. Nos. 237, 243, 253). Whitener is

represented by Charles Brewer. The Government has responded in opposition to the motion.

This Court is presented with a petition seeking relief from a long sentence of

incarceration. To be clear, this is not a case where someone was wrongfully accused and

convicted. Nor does it involve an unfair sentence. Defendant was part of a violent street gang

that distributed drugs, shot people, intimidated citizens, and tried to bribe a juror. They went to

trial and showed no remorse. The sentences given were lawful and the 18 U.S.C. § 924(c)

charges were made consecutive according to the law at the time. Defendant and his

coconspirators have served over thirty years. Normally that would be the end of the matter. But

changes to the law allow this Court to review the motion for compassionate release, based upon a

number of factors, to decide whether these defendants should be released at this time. The Court

will do its analysis below. However, granting relief today in no way criticizes the original

prosecution and sentencing.

**I.    BACKGROUND**

**A. Defendant's Conviction and Sentence Based on Stacking of Section 924(c) Offenses**

Between 1998 and 1990, Whitener participated in a highly disciplined and violent drug-trafficking organization in Charlotte, North Carolina. (WDNC Case No. 3:90CR85, Whitener Presentence Report at ¶ 4). Members of the conspiracy sold crack cocaine and used and carried assault rifles, shotguns, Uzis, and destructive devices and developed a reputation for violence. (Id.). Whitener was a leader of the organization and participated in at least four shootings, and according to the presentence report Whitener was the shooter in at least one of those incidents. (Id.).

Whitener also carried one or more firearms to protect drugs and intimidate rival drug dealers. (Id.). On one occasion, Whitener held a gun to a woman's head to force her to permit the organization to sell crack cocaine from her apartment. (Id.). Whitener's organization distributed between four and six kilograms of crack cocaine between October of 1989 and February of 1990. (Id. at ¶ 8). When Whitener committed his offenses, he had previously been convicted of two breaking-and-entering offenses, one involving cars. (Id. at ¶¶ 18–19). He was 19-years-old when he was arrested. (Id. at 1).

A federal grand jury indicted Whitener and charged him with conspiracy to possess with intent to distribute at least 50 grams of crack cocaine, 21 U.S.C. §§ 841(a)(1), 846; participating in a continuing criminal enterprise, 21 U.S.C. § 848; possessing with intent to distribute crack cocaine, 21 U.S.C. § 841(a)(1); and 13 counts of using and carrying a firearm during and in relation to the drug-trafficking conspiracy offense, 18 U.S.C. § 924(c). See (W.D.N.C. 3:15cv106, Doc. No. 27-1 at 1–7, 9–15, 18). All but three of the section 924(c) firearm offenses

were related to the drug-trafficking-conspiracy offense.  (Id.).  The conspiracy offense and a

substantive drug-trafficking offense were named as predicate offenses for three of the section

924(c) firearm offenses.  (Id.).  The 13 section 924(c) offenses were alleged to have occurred on

six different dates.  (See id.).

Whitener's case was tried by a jury, and the United States dismissed one of the Section

924(c) firearm offenses.  (WDNC Case No. 3:90CR85, 05/14/92 Amended Judgment at 1).  The

jury found Whitener guilty of all of the remaining offenses.  (Id.).  This Court's probation office

submitted a presentence report and determined that the Sentencing Guidelines called for a

sentence of between life in prison for the continuing-criminal-enterprise and drug-trafficking

offenses, based on a total offense level of 43 and a criminal-history category of IV.  (Id.,

Whitener Presentence Report at ¶ 31).  The probation office grouped the Section 924(c) firearm

offenses based on date, resulting in one mandatory consecutive term of 5 years in prison and five

mandatory consecutive terms of 20 years in prison.  (Id. at ¶ 30).  This Court sentenced Whitener

to life in prison for the drug-trafficking and continuing-criminal-enterprise offenses and to a

consecutive 105 years in prison for the Section 924(c) offenses.  (Id., Whitener Judgment at 2; id.,

Doc. 162 at 2).  Whitener appealed this Court's judgment, and the Fourth Circuit affirmed all

convictions, except the drug-trafficking-conspiracy conviction, which the court held had to be

vacated because Whitener could not be convicted of both the drug-trafficking-conspiracy offense

and the continuing-criminal-enterprise offense.  United States v. Whitener, No. 90-5918(L), 1992

WL 4248, at *3 (4th Cir. Jan. 14, 1992).

### B.  Legal Changes Regarding Stacking of Section 924(c) Offenses

When Whitener was sentenced, the law allowed the government to charge defendants

with multiple violations of Section 924(c) based on a single underlying conspiracy offense. In addition, if convicted of multiple Section 924(c) counts that were charged in a single indictment, the sentencing court was required to sentence the defendant to five years' imprisonment for the first conviction, and then sentence the defendant to twenty years' imprisonment for each subsequent conviction, all of which were required to run consecutive to one another.

Beginning in the late-1980s and throughout the 1990s, Circuit Courts of Appeal around the country examined the first stacking issue mentioned in the above paragraph (charging multiple § 924(c) violations based on a single underlying offense). The majority of Circuit Courts of Appeal that addressed the issue held that separate Section 924(c) charges must be based on separate predicate offenses; i.e., multiple Section 924(c) counts could not be based on a single drug conspiracy charge. See, e.g., United States v. Anderson, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (en banc); United States v. Lindsay, 985 F.2d 666, 672 (2d Cir. 1993); United States v. Privette, 947 F.2d 1259, 1262–63 (5th Cir. 1991); United States v. Sims, 975 F.2d 1225, 1233–36 (6th Cir. 1992); United States v. Cappas, 29 F.3d 1187, 89 (7th Cir. 1994); United States v. Fontanilla, 849 F.2d 1257, 1258–59 (9th Cir. 1988); United States v. Moore, 958 F.2d 310, 312–14 (10th Cir. 1992); and United States v. Hamilton, 953 F.2d 1344, 1346 (11th Cir. 1992). The Fourth Circuit was in the minority of circuits that adopted the contrary approach. See United States v. Camps, 32 F.3d 102 (4th Cir. 1994); see also United States v. Edwards, 994 F.2d 417, 423-24 (8th Cir. 1993).

While the Supreme Court did not address the circuit split, the Department of Justice did. In 1999, James K. Robinson, who was Assistant Attorney General at the time, issued a memorandum (the Robinson Memorandum) instructing United States Attorney's Offices to

follow the majority approach and base each separate Section 924(c) count upon a separate predicate offense.  Whitener did not receive the benefit of this adjusted practice.

**C.  This Court's Subsequent Reduction of Whitener's Sentence under the Sentence Guideline Amendments**

This Court reduced Whitener's drug-trafficking sentence under Amendment 750 to the Sentencing Guidelines, and he is now serving a sentence of 360 months in prison for the continuing-criminal-enterprise and drug-trafficking offenses and a consecutive 105 years for the section 924(c) firearm offenses, for an aggregate term of 1,620 months in prison.  (Id., Doc. No. 162 at 2; id., Doc. No. 110).  The probation office reports that Whitener has 426 months of credited time in the BOP and nine disciplinary infractions, including three infractions for fighting, the most recent of which was in 2016.  Whitener has completed 66 educational and work programs.  Whitener is currently incarcerated at Butner Medium Federal Correctional Institution.  He is 50-years-old and his current projected release date is May 8, 2105, which means that Whitener has no chance of being released from prison during his lifetime if his sentence remains intact.

**D.  Pending Motion for Compassionate Release**

In May 2020, Whitener submitted a request for compassionate release from the Bureau of Prisons.  (Doc. No. 258-1).  That same month, the warden of Whitener's BOP facility denied Whitener's request for compassionate release.  (Doc. No. 258-2).  Whitener now asks this Court to grant him compassionate release and a sentence reduction under section 404 of the First Step Act.

**II.     DISCUSSION**

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended Section 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

Before the First Step Act was enacted, the Sentencing Commission issued a policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A). The policy statement, found in U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13. The policy statement includes an

application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons."  The application note also sets out various conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances.[1]  U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

In December 2020, the Fourth Circuit Court of Appeals held in <u>United States v. McCoy</u> that the policy statement is not binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act.  981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i).  <u>Id.</u> at 281–83.  The <u>McCoy</u> Court reasoned that, because Section 1B1.13 applies only to motions brought by the BOP, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release.  <u>Id.</u>  In place of the no-longer-applicable policy statement, <u>McCoy</u> permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]"  <u>Id.</u> at 284.

The First Step Act also amended 18 U.S.C. § 924(c), removing the possibility that a

---

[1]  These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover. U.S.S.G. § 1B1.13 cmt. n.1(A).  A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less.  <u>Id.</u>, § 1B1.13 cmt. n.1(B).  Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification.  28 U.S.C. § 994(t).

defendant will receive "stacked" section 924(c) sentences by requiring that the 25-year mandatory-minimum sentence that applies for a second or successive section 924(c) conviction applies only "when a prior § 924(c) conviction arises from a separate case and already "has become final."  First Step Act § 403(a), 132 Stat. at 5222.  That change does not apply retroactively to sentences that were imposed before December 21, 2018, the effective date of the First Step Act.  Id. § 403(b).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in section 1B1.13 and that a district court may "treat[] as [an] 'extraordinary and compelling reason[]' for compassionate release the severity of the [defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's] sentences and those provided for under the First Step Act."  981 F.3d at 286.  The McCoy court reasoned that "the First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one" that made stacked § 924(c) sentences, such as the aggregate sentence that Whitener is now serving, significantly longer "'than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct.'"  Id. (quoting United States v. Redd, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)).  With regard to cases involving pre-First Step Act stacked Section 924(c) sentences, the court noted "two distinct features" of such sentences that warranted the application of the "extraordinary and compelling reasons" standard: (1) the "sheer and unusual length of the sentences[,]" and (2) the "gross disparity between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct."  Id.  The Court ultimately affirmed the reductions to four defendants' sentences under the First Step Act.  Each defendant had received a lengthy sentence due to

having multiple Section 924(c) sentences stacked before the enactment of the First Step Act. Those sentences would have been considerably less severe had they been sentenced after the First Step Act was enacted.

Following <u>Mckoy</u>, it is clear that the court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative efforts made during the defendant's time in the BOP, the defendant's prior criminal history, and the defendant's age when he committed his offenses. <u>See id.</u> It also clear, after <u>McKoy</u>, that although the policy statement found in U.S.S.G. § 1B1.13 remains useful guidance in considering motions for compassionate release, a court has the discretion to consider other facts that may constitute "extraordinary and compelling reasons," including that the particular defendant was given stacked sentences under Section 924(c).

Whitener asks this Court to exercise its discretion to grant him compassionate release because he is serving stacked 20-year sentences for section 924(c) firearm offenses all of which have a single predicate offense—the drug-trafficking-conspiracy offense for which Whitener was convicted. Were section 403 of the First Step Act in effect when Whitener was sentenced, he would have received a sentence of no more than 5 years in prison for each of his section 924(c) sentences. Additionally, as Whitener notes, the Department of Justice agreed more than 20 years ago not to seek separate Section 924(c) convictions based on a single predicate offense. Had that policy been in effect when Whitener was indicted, he would have been charged with and convicted of, at most, two section 924(c) offenses, resulting in a five-year sentence and a consecutive 20-year sentence.

The Court finds that, for the same reasons the sentence reductions were appropriate for the defendants in McCoy, a sentence reduction is appropriate, and warranted, for Whitener. The Court further finds as compelling grounds for a sentence reduction the fact of Whitener's attempts and improvements at rehabilitation. Rita Burwell, a Correctional Program Specialist/Mentor Coordinator at Butner, has submitted a letter dated June 28, 2019, in support of Whitener, stating, among other things, that:

> Whitener has been actively involved in all of the workshops and seminars provided by this Department. Reentry is the major component surrounding these activities. Whitener has been a positive role model for many of his fellow inmates. He shares his plans and desires to give back to his community upon his release, which motivates others to do the same.
> Whitener stays abreast of and requests participation in upcoming programs in the Department. He is diligent and determined to take advantage of every opportunity and all of the resources available to aid him in his reentry success.

(Doc. No. 243-2 at 18).

Oliver Muhammad, Staff Chaplain at Burner, has also submitted a letter in support of Whitener, dated June 30, 2019, in which he states about Whitener:

> I have observed over the seven years Whitener change and grow in character and grow in moral courage. He has worked very hard to practice what he preaches and teaches by closing the gap between what he has learned as ethical and moral principles and actually applying that knowledge to his life. Consequently, he has become a role model and mentor to hundreds of inmates by the way he is living.

(Doc. No. 243-2 at 19).

The Court further finds as compelling that fact that Whitener has provided the Court with an impressive plan for his re-entry into society. That is, he has registered for re-entry assistance from The Center for Community Transitions, which has submitted a letter to this Court, stating that the organization is willing to work with him upon release to prepare him for successful reintegration into society. See (Doc. No. 243-2 at 13). He has also been taken in as a client of

Project B.O.L.T., a nonprofit organization dedicated to helping previously incarcerated people re-enter society. <u>See</u> (Doc. No. 243-2 at 12). Whitener also has plans to live with this mother in Charlotte, North Carolina, when he is released from prison. (<u>Id.</u> at 11).

The Court further finds that Whitener has presented compelling evidence indicating that he no longer presents a danger to the community. Whitener was extremely young when he committed the instant offenses and when was taken into custody. He is now 50-years-old, and he has been in custody for over 30 years, during which time he has taken great steps to educate himself, rehabilitate himself, and prepare for re-entry into the community. Furthermore, the Court finds as laudable that, at the hearing on Whitener's motion, Whitener did not attempt to downplay or make excuses for his past criminal behavior. Rather, he appeared to genuinely accept responsibility for his actions as well as the fact that the sentence he has already served was just and appropriate, given his crimes. The Court finds that there is simply no additional benefit to be achieved by incarcerating Whitener for the rest of his life.

In sum, under the First Step Act, Section 924(c) convictions can no longer be stacked to create excessive sentences like the one imposed in this case. That fact, coupled with Whitener's personal history, characteristics, and rehabilitation, constitute extraordinary and compelling reasons to grant relief. This Court therefore grants Defendant's motion compassionate release and sentences him to time-served.

## ORDER

(1) **IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release (Doc. Nos. 237, 243, 253) is **GRANTED**, and the Court hereby orders that Defendant's term of imprisonment is reduced to **TIME SERVED**.

**(2) IT IS FURTHER ORDERED** that, upon release from imprisonment, Defendant shall be placed on supervised release for a term of five years. While on supervised release, Defendant shall not commit another federal, state, or local crime and shall comply with the standard conditions that have been adopted by this Court, which the Court has reviewed, and which the Court finds are appropriate.

**(3) IT IS FURTHER ORDERED** that Defendant shall not contact any of the witnesses from his underlying criminal case, or the witnesses' families, without the specific approval from his probation officer.

**(4)** Defendant is therefore **ORDERED** released from the custody of the United States Bureau of Prisons and/or the custody of the U.S. Marshals Service. To allow the Bureau of Prisons/United States Marshal/Pretrial Service adequate time, such are allowed up to ten days to comply with this order.

**(5)** The Clerk of Court shall certify copies of this Order to the U.S. Bureau of Prisons, U.S. Marshals Service, and the U.S. Probation and Pretrial Services Office.

.

Signed: June 1, 2021

Max O. Cogburn Jr
United States District Judge

-12-